*Between            183

MILES CARY and Grizzel his wife, and Josiah Buxton, *plaintiffs,*

AND

NATHANIEL BUXTON, *defendent.*

### March, 1793.

1. *Wills—Construction—Election—Case at Bar.* 1751, *J. B.,* who was seised of lands in fee, devised them to his eldest son, who was also heir in tail of other lands which *J. B.* held in tail, and which he devised to his sons *T.* and *W.* The heir of the eldest son recovered the entailed lands which the father had devised; but an injunction was granted; and it was HELD that it was plainly contrary to the testator's intention, that he should have all the lands; and having elected to take those in tail, he was compelled to convey the others to those who claimed through *T.* and *W.*

2. *Same—Same—Same—Same.*—Along with the lands held by the testator in fee, he bequeathed slaves to the eldest son. HELD, that he should also account for said slaves and their increase, and for the rents and profits of the lands to be conveyed by him; and the plaintiffs should account for the rents and profits of the lands recovered by him.

JAMES BUXTON, seised of lands, part in fee simple, and other part, by the testament of Richard Bennett, in fee taille in the year 1751, devised the former, called his old plantation, to his eldest son John, to whom he also bequeathed several negro slaves and chatels, and devised the latter, consisting of two tenements, one called Bacons, to his son Thomas, and the other called Jordans, to his son William, and to their respective heirs. the devise to John was without words of inheritence. in a subsequent clause is a devise to the testators son Josiah, and to his heirs, of the plantation given to any of his sons who should die without issue; whereby the estate de-

vised to every son, except Josiah, was an entail.

The defendent, only child of John, recovered the lands entailed by Bennetts testament from the plaintiffs, who had succeded to the rights of Thomas and William.

The plaintiffs, by their bill, prayed that the defendent might be decreed to convey and deliver to them the lands and slaves, and pay to them the value of the other estate, which had been devised and bequeathed by his grandfather to his father, and had come into possession of the defendent himself, if he elected to retain the lands recovered, and that the judgment might be enjoined until further order, which injunction was awarded.

The defendent, by his answer, insisted that the devise to his father, if the words were proper to convey a fee simple, was void, because being heir he took by descent, but, whether he took by descent, or whether a fee taille were devised, he clamed *the lands devised by both testators; electing however, if he must be confined to one, to hold those devised by Bennett: and stated that of the slaves bequeathed to the defendents father, and their increase, some were dead, one had been sold by the defendent, and the remainder, who had eloped to the british enemy, never returned.

The case was argued the 2 day of march 1793, when the court delivered this

OPINION,

That the defendent, who, claiming by the testament of Richard Bennett, hath recovered the entailed lands devised by James Buxton to his sons Thomas and William, ought not to retain any estate or interest derived from the said James Buxton by (a) testament, but ought to yield the same to the plaintiff; because the presumption, that this testator, if he had known that right to exist, the assertion of which after his death deranged the partition of the estate made by him, would have provided some other way for those younger sons, at least would have bestowed upon them what he devised and bequeathed to his eldest son, or would have directed their loss to be compensated out of his legatary portion, is no less cogent of our belief, than a paragraph, to one or other of those purposes, inserted in his testament, would have been; and this presumption will authorise the supplement of such a provisory substitution of Thomas and William for John, in the testament. the supplement (b) is conceived *to be sanctified

(a) In this part of the opinion prefixed to the decree, as it is entered on the record, are the words, hereditary succession or, which were inserted inadvertently.—Note in edition of 1795.

(b) Examples of supplements to render effectual the presumed wills of testators.

1. Curius substitutus heres erat, si posthumus ante tutelae suae annos decessisset. non est natus. propinqui bona sibi vendicabant. quis dubitaret, quin ea voluntas fuisset testantis. ut is non nato filio heres esset, qui mortuo? sed hoc non scripserat. Quinctil. de institut. orator. lib. VII. c. VI. Cicero. orat. pro A. Caecina, c. 8. see eq. ca. abr. part 1 p.

by the necessity of some expedient to effectuate, as much as is now possible, and with least inconvenience, the intention of a testator to give some of his lands to two of his children; an intention, otherwise, wholely frustrated through error in him. and this expedient is recommended by its concordance with the principles of equity, which forbid him, *who gaineth by abolishing one part of a testament, to gain also by another part of the same testament suffered to retain its vigor,

245. c. 10. and eq. ca. abr. part 2 p. 294. c. 24. that the testator, who willed, if a posthumous son should die before a certain age, Caius to be his heir, must have willed the same Caius to be heir if no posthumous son existed, was so presumable that none could doubt it. the judges in that case therefore allowed his claim; but this could not be done without supplying words adapted to the event, so that the testament would be understood as if the terms had been these: Curius heres esto, si posthumus mihi natus non fuerit, aut si ante tutelae suae annos decesserit.

2. Si ita scriptum sit, si filius mihi natus fuerit, ex besse heres esto, ex reliqua parte uxor mea heres esto; si vero filia mihi nata fuerit, ex triente heres esto, ex reliqua parte uxor heres esto: et filius et filia nati essent, discendum est (according to the opinion of Julianus) assem distribuendum esse in septem partes, ut ex his filius quatuor, uxor duas, filia unam partem habeat: ita enim secundum voluntatem testantis, filius altero tanto amplius habebit quam uxor, item uxor altero tanto amplius quam filia. licet enim subtili juris regulae conveniebat, ruptum fieri testamentum, attamen, quum ex utroque nato testator voluerit uxorem aliquid habere, ideo ad hujusmodi sententiam, humanitate suggerente, decursum: est quod etiam Juventio Celso apertissime placuit. Dig. lib. XXVIII. tit. II. l. 13. words must also be supplied here; the testament not having provided for the case of twins, undoubtedly because the event was not contemplated.

This opinion of Julianus seems not approved by Home, in his principles of equity, book 1 part 1, sect. 3, art. 2. yet, in the next paragraph, he approves a decision, perhaps not less exceptionable, of a case thus reported by him:

In a contract of marriage there was the following clause: and in case there shall happen to be only one daughter, he obliges him to pay the sum of 18000 merks; if there be two daughters, the sum of 20,000 merks, whereof 11000 merks to the elder, and 9000 to the younger; and if there be three daughters, the sum of 30000 merks, 12000 to the eldest, 10000 to the second, and 8000 to the youngest. a fourth daughter having existed of the marriage, the question occurred, whether she could have any share of the 30000 merks, upon the presumed will of the father, or be left to insist for her legal provision ab intestato. the court decreed 4500 merks as her proportion of the 30000 merks; so as to restrict the eldest daughter to 10500 merks, the second to 8500, and the third to 6500. though the existence of a fourth daughter was a casus incogitatus, for which no provision was made. yet as it appeared to be the fathers intention to provide for all the children of that marriage, there was a right created in the fourth daughter by this intention, which intitled her to a share of the 30000 merks.

3. Clemens Patronus testamento caverat, ut si sibi filius natus fuisset, heres esset: si duo filii, ex equis partibus haeredes essent: si duae filiae, similiter: si filius et filia. filio duas partes, filiae tertiam dederat. duobus filiis et filia natis, quaerebatur quemadmodum in proposita specie partes faciemus: cum filii debeant pares esse, vel etiam singuli duplo plus quam soror accipere. quinque igitur partes fieri oportet, ut et ex his binas masculi, unam foemina accipiat. Dig. lib. XXVIII. tit. V. l. 81.

4. Gilberts reports of cases in equity, p. 15 nearly resembling the principal case. Bur. rep. part 5 p. 2703 1 ld. Raym. rep. 187.

Examples of total rescissions of testaments, presumed to be contrary to the wills of the testators, because they were impressed with the belief of falsehood.

1. De militis morte, cum domum falsus ab exercitu nuntius venisset, et pater ejus, re credita, testamentum mutasset, et quem ei visum esset, fecisset heredem. essetque ipse mortuus: res delata est ad

and require the sharer in a general allotment, who occupieth the portion destined for a fellow sharer, to cede to him the portion destined for himself. (c)

And the court pronounced the following

DECREE.

That the defendant, do convey, with warranty against any claming under him, to the plaintiffs Miles Cary and Grizzel his wife, and to the heirs of the wife, one moiety, and to the plaintiff Josiah Buxton, and to his heirs, the other moiety, of the old plantation, which the testator devised to the defendents father, at the costs of the

---

centumviros, cum miles domum revenisset, egisset-que lege in hereditatem paternam. nempe in ea causa quaesitum est de jure civili, possetne, paternorum bonorum exheres esse filius, quem pater testamento neque heredem, neque exheredem, scripsisset nominatim? Cicero de oratore, lib. 1. c. 38. how the question was then decided this author doth not say. Valerius Maximus, lib. 7. c. 7, reports that adolescens, omnibus, non solum consiliis sed etiam, sententiis superior decessit. to show how it would be now decided, any modern adjudication, inducing a probable conjecure, is not recollected.

2. Pactumeius Androsthenes Pactumeium Magnam filiam Pactumeii Magnia ex asse heredem instituerat: eique patrem ejus substituerat. Pactumeio Magno occiso et rumore perlato, quasi filia ejus quoque mortua, mutavit testamentum, Noviumque Rufum hæredem instituit, hac praefatione: quia hæredes, quos volui habere mihi, continere non potui, Novius Rufus heres esto: Pactumeia Magna supplicavit imperatores nostros, et cognitione suscepta, licet modus institutione contineretur, quia falsus non solet obesse, tamen ex voluntate testantis putavit imperator ei subveniendum: igitur pronunciavit, hereditatem ad Magnam pertinere: sed legata ex posteriore testamento eam praestare debere, proinde atque si in posterioribus tabulis ipsa fuisset heres scripta. Dig. lib. XXVIII. tit. V. 1. 92. the former part of this sentence is thought indubitably right.

Example of a testament becoming null by a presumed change of will from an event not expected when the testament was made.

Num quis eo testamento, quod paterfamilias ante fecit quam ei filius natus est, hereditatem petit? nemo: quia constat, agnascendo rumpi testamentum: ergo in hoc genere juris judicia nulla sunt. Cic. de oratore, lib. 1. c. 57. this author supposed no man would question whether the rupture of a testament were wrought by the posterior birth of a son. this was perhaps because by the roman civil law, qui filium in potestate habet, curare debet ut eum heredem instituat (quamvis ex minima parte) vel exheredem eum nominatim faciat: alioquin si eum silentio praeterierit, inutiliter testabitur. Just. institut. lib. II. tit. XIII. testametum dicitur nullius esse momenti, cum filius, qui fuit in patris potestate, praeteritus est. Dig. lib. XXVIII. tit. III. l. 1. see Home's pr. eq. book 1, part 1. sec. 3, art. 3. Bur. rep. part 5. p. 2703. acts of gen. assembly, oct. 1785. c. 63, sect. 3.—Note in edition of 1795.

(c) To prevent that which a testator willed not to be, is as pious an act as to perfect that which a testator willed to be.

That the testator, in this case, willed his son John not to have all the three tenements, old plantation, Bacons, and Jordans we know with certainty.

To prevent this, since the heir of John hath, by an extraneous right, vindicated to himself two of the tenements, is impossible, if the devise of old plantation to John remain as it is. to declare it intirely void would be nugatory, because he would then take the land by hereditary succession. the only method, therefore, by which the effect ·desired can be accomplished, is a translation of the benefit intended by that devise for John. if he would have acquiesced in other parts of the testament, to his brothers, Thomas and William, who were deprived by him of the benefits intended for them. thus the benevolence of the testator, interrupted in the course directed by him, will be diverted into the course which he would have directed if he had foreknown the cause of the interruption, although perhaps less copiously than he wished.—Note in edition of 1795.

---

plaintiffs, and resign the possession thereof to them; that the injunction, awarded for preventing emanation of the habere facias possessionem, in execution of the judgment against the plaintiffs recovered by the defendent be dissolved; but that the defendent be not intitled to the benefit of this dissolution, until he shall by affidavits have proved to the clerk of the general court that he the defendent had executed the conveyances, and resigned the possession, of the old plantation before mentioned to the plaintiffs, or that he had offered to do so, and that the plaintiffs had failed to procure the one, and refused to accept the other; that accounts of the rents and profits of the plantation to be conveyed to the plaintiffs and also of the lands recovered from them by the defendent, since the last day of december, 1770, and accounts of the slaves, and personal estate of James Buxton, which came into possession of the defendent, and of the profits of the said slaves, and value received by the defendent for any of them which he hath sold or otherwise disposed of, being made up before commissioners afternamed, the plaintiffs to be made debitors for the rents and profits of the lands recovered from them, and creditors for the other articles, with the costs expended by them in prosecution of this suit, the party from whom the balance shall appear to be due do pay the same to the adverse party; and that the defendent do deliver such of the said slaves as remain, if any remain, subject to his power, to the plaintiffs. and Solomon Sheppard and others were appointed commissioners.

---

\*Between       188

LAMBERT CADWALLADER and Philemon Dickenson, executors of John Cadwallader, and Edward Loyd, administrator of Edward Loyd, with his testament annexed, *plaintiffs,*

AND

ELIZABETH MASON, Abraham Barnes, Thompson Mason, John Thompson Mason, and Bailey Washington, *defendents.*\*

March, 1793.

**Mortgages—Mortgagor's Accountability of Profits.†—** A mortgagor, or his devisee, who will not redeem

---

\*For monographic note on Deeds of Trust, see end of case.

†**Mortgages—Right to Rents and Profits.**—In Clarke v. Curtis, 1 Gratt. 289, it is said that, although it is competent for a court of equity, in a proper case, to sequestrate the rents and profits of mortgaged or incumbered property, where a forfeiture has accrued, and such rents and profits may be necessary to discharge the incumbrances, it is not competent to recover from the mortgagor, or equitable owner in possession, the rents and profits actually received by him, or which accrued before any order of sequestration was made.

And, in Allen v. Gibson, 4 Rand. 476, it is said: "A mortgagee, after the mortgage is forfeited, has a right to the possession of the mortgaged premises, and may enter thereon, or maintain an ejectment;